W. C. LOVELL, SR., V. THE STATE.

No. 15719.   Delivered March 22, 1933.
Rehearing Denied May 17, 1933.
Reported in 60 S .W. (2d) 208.

The opinion states the case.

*E. B. Lewis,* of Center, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for transporting intoxicating liquor; punishment, one year in the penitentiary.

Officers went to the premises of George Dry, who from the facts in this case seems to be very wet, and hid themselves in a shed. They saw appellant, with a tow sack under his arm, come to the place. There was a little room built on the house of Mr. Dry. Appellant walked up to this room, opened the door and went in. The officers heard bottles rattling. Appellant came out with the sack in his hand and started off. When he had gone about thirty feet the officers stopped him, asked him for the sack, which was found to contain twelve bottles of beer, testified to without contradiction as being intoxicating. Appellant told them it was his beer. He went back to the little room with them where a quantity of beer was found, and also equipment such as a siphon and capper for putting it up in bottles.

Appellant introduced several witnesses who testified that they had bought beer from Mr. Dry at this same place. He then put his wife on the stand who swore that a doctor had told her beer would be good for her, and that on the day of appellant's arrest she asked him to get some beer for her, and

he left for Mr. Dry's place to get it. She testified that some one had said that Mr. Dry had beer. She further testified that she had never sent him for beer before. Appellant also put on the stand a doctor who swore, among other things, that he told appellant's wife as follows: "I told her she could drink beer, and it wouldn't hurt her, I didn't think." He said he gave her no directions as to what kind of beer, just beer; but he wanted her to drink home-brew. He gave her other medicine.

Appellant then put on the witness stand Mrs. George Dry, who made him a good witness on direct examination, going so far as to swear that the officers arrested appellant in the little room where the ice box was; that he had not moved with the beer. On cross-examination, however, she swore that all the beer in the ice box at their house was partnership beer between her husband, appellant, and his son; that they had been putting up their beer there about three weeks; that to the best of her recollection appellant had made three or four trips during that time, and each time he would get beer and carry it away. She said the ice box (where the beer was) was locked, and, "If any other party had a key to the ice box except Will Lovell, I do not know it." She further testified: "There were four jugs of beer around there that they had at that time. Two belonged to George and two belonged to the Lovells. Nobody else was interested in the beer except the Lovells and George Dry." This witness thus completely made out against appellant the state's case, in addition to the case already made by the state witnesses. Appellant did not testify. The evidence was ample to support the conviction for transportation of intoxicating liquor. Where appellant was going with the liquor when stopped by the officers we do not know, but he had already started on a journey to some place away from the Drys.

We do not quite understand appellant's theory of this case. The liquor may have belonged, in part, to the Drys, who, as stated above, appear to have been all wet, but part ownership in the Drys would not have justified appellant in the transportation of the liquor. The court submitted to the jury in a proper charge the theory that if he was transporting liquor for the purpose of using it as medicine for his wife, he should be acquitted, but the jury found against this plea.

Appellant has twenty-one bills of exception, each of which has been examined but which will not be discussed seriatim. What was said by appellant, and done by the officers at the time of his arrest, was part of the res gestae. The mention of appellant's failure to testify by a member of the jury, was shown by the testimony of all the jurors to have been but a

casual reference, and was not discussed. The indictment was not subject to exception, nor could the state be required to elect in advance of the close of its testimony. The testimony objected to by appellant was all admissible.

No error appearing, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—The testimony for the state comes from Peace Officers J. B. Samples and Lucky Pleasant. Much of the evidence is in question and answer form and for that reason cannot be considered. See C. C. P., art. 760, subd. 3; Acts of 42nd Legislature, First Called Session, Chapter 34, page 75; Gifford v. State, 101 Texas Crim. Rep., 7; Vernon's Ann. Tex. C. C. P., 1932 Supplement, p. 21, note 23.

From the state's testimony, it appears that Samples went to the place of a man named Dry on the 24th of June and secreted himself in a shed-room attached to Dry's house. After about twenty-five minutes Lovell walked to the shed-room. Samples was under the back of the shack or shed-room. Lovell was carrying a tow-sack under his arm. He walked to the room and opened the door. Lovell walked out of the room and Samples went to the gate and observed that Lovell had something in a sack which he was carrying in his hand. When Lovell approached the gate, Samples told him to "hold on a minute." Lovell stopped and Samples said: "Will, give me this." From the testimony we quote: "He handed the sack to me, and Lucky searched him, and I looked in the sack, and it was beer. Twelve bottles of beer were in it. It was ice cold. He didn't say anything then, and I said, 'Where is the rest of the beer,' and he said, 'All right, it is mine,' and he turned around and went back and he unlocked the ice chest, and he had the key in his pocket, and sixty bottles of beer was in the ice box."

Going with Lovell into the room, the officers found four five-gallon demijohns of beer and several empty cases of beer bottles, with thirty-six bottles to the case.

Samples testified further: "When we first arrested him, he started back and said it was his beer. We were there in the house probably a few minutes before we started sacking the beer, and while we were sacking it and until we got the other, I expect it was twenty minutes."

From the time that the appellant was stopped with the bottles of beer, the officers did not permit him to leave, but there was nothing said about his arrest. Appellant was asked about

the beer and he said it belonged to him. He had a key in his pocket with which he unlocked the ice chest and showed the officers the other beer which was in a large container. Appellant said that if the officers would release him he would quit; that he would pour out the beer and bother them no more. Besides the beer, the officers found a bottle capper, a siphon tube, and an old funnel.

Samples testified on cross-examination that he knew where Lovell lived; that the bottles of beer were found in Dry's house, which was about three-quarters of a mile from the dwelling-place of Lovell. Dry's house seems to consist of two rooms situated about ten feet apart and a shed-room in the rear. Dry and his wife lived in the rooms. Lovell did not live at Dry's house.

Pleasant's testimony in substance covered the same transaction as that testified to by Samples. Pleasant made the following ing statement: "Then Mr. Samples took the sack out of Mr. Lovell's hand, and I searched him. Then we asked him where the rest of the beer was,—then we walked back into the room where he got the beer—then he unlocked the ice box and got sixty bottles of cold beer and then we asked if he had any more beer and—then he went to a little shack and he said he thought he had a couple more bottles."

Several witnesses testified for the appellant that at or near the time of the arrest of Lovell they had bought beer from Dry.

Mrs. Will Lovell, wife of the appellant, testified that she was suffering with an ailment which required consultation with a doctor; that she conferred with Doctor Bailey, who advised that she drink three bottles of beer a day. Her husband was present at the time this advice was given. Following her advice, she asked her husband if he would get her some beer. He left home for that purpose and when she next heard of him he had been arrested.

Dr. Bailey testified that he had treated Mrs. Lovell professionally prior to the arrest of the appellant; that her health was not very good. He told her that she could drink beer; that he did not think it would hurt her but would be very beneficial to her. He knew nothing of her facilities for obtaining beer. He did not give her any information upon that subject.

Mrs. George Dry, introduced by the appellant, testified that Lovell was arrested at her house; that the liquid in bottles and jugs in the house belonged to her husband. When Lovell came to the house, Dry was not at home. Lovell got some beer, which was in the ice box in the little room. She thought that the box was unlocked. The key was hanging on the door. Lovell

took the key and went to the ice box. A few minutes there-after the officers appeared. Lovell was in the room where the ice box was and did not move from where the box was stand-ing. From her testimony we quote: "My husband and Mr. Lovell had been putting up their beer there about three weeks, the best I remember. I didn't keep count of the number of trips Will Lovell made to and from my house during that time. * * * He had come several trips—about three or four times, the best I remember. And he would get beer each time and carry it away." The witness had no key to the ice box. She did not own a lock and did not know about the one on the ice box.

Mrs. Dry testified further: "I can't tell you to whom that beer in that ice box belonged * * * because it was partnership, and I do not know, but I think George had more beer in it than the rest. * * * I did not sell that beer to Will Lovell." She was positive that the appellant was arrested before he left the house. He had twelve bottles of beer in a sack, but he was not in the yard. The lock had been on the ice box about three days. There were four jugs of beer around there at the time. Two of them belonged to her husband and two belonged to Lovell. No one was interested in the beer except Lovell and Dry.

Twenty-one bills of exception appear in the record. A dis-cussion of them in detail is not deemed necessary or practicable for the reason that they consist of much repetition. The testi-mony of the officers (Samples and Pleasant) was opposed upon the ground that it transgressed the rule of evidence excluding declarations of one accused of crime while under arrest. The contention is not deemed tenable for the reason that the decla-ration mentioned appears to be res gestae of the transaction upon which the prosecution is founded. Many precedents are cited by Mr. Branch in his Ann. Tex. P. C., sec. 83, subd. 5, supporting his declaration as follows: "Whatever is said by any party to a transaction declared on in the indictment, at the time of the transaction, is a part of the transaction itself, and is a part of the res gestae." Citing Black v. State, 8 Texas Crim. App. 329. The author says further: "The mere fact that declarations are made in answer to questions will not, of itself, prevent such declarations from being res gestae." Citing Boothe v. State, 4 Texas App., 211. See Branch's Ann. Tex. P. C., pp. 52 and 53.

In the present instance, at the time of the transaction the appellant was interested in a quantity of beer situated in the house of Dry, and was in the act of transporting a part of the beer away from the house of Dry. There was evidence that

the liquor was kept in Dry's house for the purpose of sale and that appellant was interested in the beer. There are many precedents supporting the contention of the state. Among them is Broz v. State, 93 Texas Crim. Rep., 137. The announcement in that case has been followed in many others which will be found listed in Shepard's Tex. Citations, Feb., 1933, p. 137.

The complaint in bill of exception No. 1 of the refusal of the court to grant the appellant's motion for a severance is untenable for the reason that, as qualified, the bill shows that the appellant and W. C. Lovell, Jr., were not indicted for an offense growing out of the same transaction.

The search of Dry's premises is not a matter of which the appellant is in a position to complain. See Comeaux v. State, 42 S. W. (2d) 255; Whitlock v. State, 58 S. W. (2d) 109. Moreover, the finding of the demijohns and a quantity of beer as the result of informaton given by the appellant, which beer was situated in the house of Dry, was relevant upon the issue of the intent of the appellant, which issue was raised by the testimony of the appellant's wife and the doctor to the effect that the appellant was transporting beer for his wife's health.

That part of the motion for new trial based upon the contention that there was misconduct of the jury in considering the appellant's failure to testify is not regarded as tenable for the reason that it appears from an examination of the evidence heard, the trial court was warranted in concluding that there was no discussion of the appellant's failure to testify. At most, there was merely the mention of his silence. The recitals in the bill do not warrant a finding that the silence of the appellant was taken by the jury as a circumstance against him. See Scrivnor v. State, 50 S. W. (2d) 329; Brice v. State, 57 S. W. (2d) 832.

All the other bills of exception have been carefully examined and considered. In the main they are but repetition of the same contentions as have been discussed in this opinion, and none of them present any matter justifying reversal and requiring additional comment.

The motion for rehearing is overruled.

*Overruled.*